09    1946



**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ MAY 0 8 2009 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
MATTHEW SWIFT,

                          Plaintiff,                    **COMPLAINT**

          -against-                                     **TRIAL BY JURY DEMANDED**

COUNTRYWIDE FINANCIAL
CORPORATION d/b/a
BANK OF AMERICA HOME LOANS              **WEXLER, J.**

                          Defendant.
--------------------------------------------------X         **LINDSAY, M.J.**

          Matthew Swift ("plaintiff" or "Swift"), by and through his counsel, Law Offices

of Joshua Friedman, hereby complains about the defendant, Countrywide Financial

Corporation, doing business as Bank of America Home Loans ("defendant"), as follows:

### Jurisdiction, Venue And Parties

          1. This is a gender stereotype harassment and retaliation case brought pursuant to

Title VII of the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C. § 2000e et seq.

("Title VII"), and section 296 of the New York State Executive Law ("Human Rights

Law").

          2. This Court has jurisdiction pursuant to 28 U.S.C. § 1343. This Court has

supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

          3. Venue is proper pursuant to Title VII's special venue provision, 42 U.S.C. §

2000e-5(f)(3), in the Eastern District of New York, the judicial district in which the

unlawful employment practice is alleged to have been committed.

## THE PARTIES

4.   Plaintiff worked for Countrywide Financial Corporation as an underwriter in the Melville, New York office from June 4, 2007 until defendant terminated his employment on October 17, 2007.

5. Defendant was acquired by Bank of America as Countrywide Financial Corporation in a stock acquisition in July 2008. In or about April 27, 2009, defendant changed its name to Countrywide Financial Corporation d/b/a Bank of America Home Loans. Defendant is a financial services corporation that specializes in mortgages for individual homebuyers. On information and belief, defendant is a separate corporate entity whose stock is wholly owned by Bank of America Corporation.

## EXHAUSTON OF ADMINISTRATIVE REMEDIES

6.   On or about July 7, 2008, plaintiff filled a Charge of Discrimination alleging harassment and retaliation with the United States Equal Employment Opportunity Commission ("EEOC"). The Charge was assigned number 520-2008-04246.

7.   The EEOC issued plaintiff a Notice of Right to Sue on the ground that "more than 180 days have passed since the filing of this charge."

8.   This complaint is timely filed within 90 days of plaintiff's receipt of his Notice of Right to Sue.

## FACTS

9.   Michael Giardina ("Giardina") harassed plaintiff based on his belief that plaintiff did not conform to the stereotypical male ideal.

10. At all relevant times, Giardina was a senior loan officer at defendant's Melville location and worked in tandem with plaintiff.

11. Swift and Giardina were co-workers.

12. As an underwriter, Swift was tasked with the review of all potential home loans brought in by Giardina, who was responsible for selling mortgages issued by defendant to qualifying homebuyers.

13. Giardina routinely harassed Swift because plaintiff exhibited his masculinity in a manner that apparently did not comport with Giardina's idea of how men ought to appear or behave.

14. Throughout plaintiff's tenure working for defendant, Giardina repeatedly subjected Swift to slurs and other forms of harassment based on his male sex.

15. On a weekly basis, Giardina would make disparaging remarks about plaintiff in front of their co-workers and managers, which included, but were not limited to: "Get to work on this, you girl!" and "Come on pussy, just approve the loan!"

16. In or about August 2007, Giardina angrily approached Swift about a loan appraisal that Swift had not yet completed even though Giardina specifically instructed plaintiff not to work on the appraisal until he gave him permission to do so, which Giardina had failed to do.

17. When Swift reminded Giardina about his instructions regarding work on the appraisal, Giardina said to plaintiff in a voice loud enough for other members of their office to hear: "Why are you being such a girl about this!"

18. Philip Manfre ("Manfre"), the branch sales manager, and Linda Signor ("Signor"), the branch operations manager and plaintiff's supervisor, witnessed this interaction and laughed.

19. Moreover, Manfre and Signor blamed Swift for the mistake until he showed them a Post-It Note containing Giardina's instructions not to work on the appraisal until he got back to Swift.

20. Immediately following this incident, Swift complained to Signor about Giardina's constant harassment.

21. Swift told Sigor that Giardina regularly called him "pussy," "girl," and "fag" in front of his others, which embarrassed and demeaned him.

22. Swift also showed Signor another Post-It Note from Giardina, which stated: "Clear this fucking loan and get it to Janet so we can schedule."

23. In response to Swift's complaint, Signor smiled and said that Giardina "was probably kidding." Signor then noted, "What's the big deal?"

24. Swift told Signor that he did not find Giardina's conduct funny and that it "crossed a line."

25. Plaintiff also said that he was disappointed and uncomfortable that Signor and Manfre laughed when Giardina called him a "pussy" and a "girl" and cursed at him.

26. Upon information and belief, Signor discussed Swift's complaint with Manfre who then called plaintiff into his office.

27. Manfre and Signor were both present when Swift entered Manfre's office.

28. Manfre and Signor laughed when plaintiff discussed his concerns about Giardina's mistreatment but said they would speak to Giardina about his conduct if it really bothered plaintiff.

4

29. In the weeks following Swift's complaint of harassment about Giardina, Signor began to retaliate against plaintiff by finding fault with him in ways that were not deemed to be problematic prior to his complaint.

30. For example, Signor criticized plaintiff for taking too many cigarette breaks. However, each time Swift went outside to have a cigarette, he found Signor and Manfre already there taking their own smoking break.

31. Following plaintiff's complaint, Giardina's use of slurs and other inappropriate language when he spoke to Swift did not stop.

32. For this reason, plaintiff requested a meeting with a senior manager to discuss his harassment complaint against Giardina and Signor's retaliatory treatment of him following the complaint.

33. In or about early September 2007, Swift met with defendant's Executive Vice President of Operations, Martin Sasbon ("Sasbon"). Signor and Manfre were also present at that meeting.

34. During the meeting, plaintiff told Sasbon that Giardina routinely used slurs such as "pussy," "girl," and "fag" when referring to him. Swift also described for Sasbon the incident in August, when Giardina called plaintiff a "girl" in front of his co-workers and supervisors, including Signor and Manfre, who all laughed at him.

35. Swift became tearful when describing how Giardina insulted him by calling him "pussy," "girl," and "fag" and the embarrassment he felt when his co-workers and managers laughed at his expense.

36. Plaintiff also told Sasbon that since his complaint about Giardina's harassment, Signor's demeanor toward him had changed significantly. Unlike her practice before he

complained, Swift noted that since his complaint, Signor criticized him for taking smoking breaks and for small administrative errors that she had not taken issue with in the past.

37. During the meeting with Sasbon, Signor and Manfre criticized plaintiff for taking too many smoking breaks.

38. Sasbon conceded that Giardina's conduct was inappropriate as was Signor's conduct during that meeting.

39. Sasbon assured plaintiff that the harassment and the retaliation would stop.

40. The following day, Swift received a telephone call from defendant's First Vice President of Operations, P.J. Pamulo ("Pamulo").

41. Plaintiff told Pamulo that Giardina routinely harassed him by calling him "pussy," "girl," and "fag." Swift also told Pamulo that Signor began to criticize him for things she had never found problematic in the past after he complained to her about Giardina's inappropriate conduct.

42. Pamulo confirmed that Giardina's harassment of plaintiff and Signor's retaliatory treatment of him were wrong and should stop.

43. However, upon information and belief, defendant did not discipline Giardina or Signor for their illegal conduct and the illegal conduct did not stop.

44. In or about mid-September 2007, Giardina left a Post-It Note on a file Swift was working on for him that read: "CLEAR THIS FUCKING FILE YOU FAG." That Post-It Note is attached hereto and incorporated herein as Exhibit A.

45. Shocked, plaintiff brought the note to Signor.

46. Signor reviewed the note and said: "Are you sure this is not a joke?" and laughed.

47. On or about October 10, 2007, Signor and Manfre called Swift into a meeting to present him with a 60-day warning notice for what was described as unsatisfactory job performance because of a failure to follow company policy.

48. On or about October 17, 2007, Signor and Manfre requested that Swift attend a meeting with them in the conference room immediately.

49. Upon entering the conference room, plaintiff was given a packet of documents and informed that defendant was conducting a "reduction-in-force."

50. As a result, Signor and Manfre informed Swift that it was his last day working for defendant. They told plaintiff he would receive one week of severance pay and asked if he had any questions.  He did not and was asked to leave immediately.

51. As a result of the harassment and retaliatory treatment at Countrywide Financial Corporation, plaintiff has experienced economic loss as well as severe depression, anxiety and anger.

## COUNT I

### FAILURE TO CONFORM TO GENDER STEREOTYPE HARASSMENT
### IN VIOLATION OFTITLE VII

52. Plaintiff hereby alleges and incorporates by reference the preceding paragraphs.

53. Defendant's conduct violated Title VII.

54. Defendant created a hostile work environment based on plaintiff's male sex.

55. Defendant's conduct proximately caused plaintiff's injuries.

## COUNT II

### FAILURE TO CONFORM TO GENDER STEREOTYPE HARASSMENT
### IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

56. Plaintiff hereby alleges and incorporates by reference the preceding paragraphs.

57. Defendant's conduct violated the New York State Human Rights Law.

58. Defendant created a hostile work environment based on plaintiff's male sex.

59. Defendant's conduct proximately caused plaintiff's injuries.

## COUNT III

## RETALIATION IN VIOLATION OF TITLE VII

60. Plaintiff hereby alleges and incorporates by reference the preceding paragraphs.

61. Plaintiff engaged in protected activity under Title VII.

62. Because of this protected activity, defendant, through its employees, took adverse actions against plaintiff, including but not limited to his termination of employment, conduct that would sufficiently deter a reasonable person from engaging in protected activity.

## COUNT IV

## RETALIATION IN VIOLATION OF

## THE NEW YORK HUMAN STATE RIGHTS LAW

63. Plaintiff hereby alleges and incorporates by reference the preceding paragraphs.

64. Plaintiff engaged in protected activity under the New York State Human Rights Law.

65. Because of this protected activity, defendant, through its employees, took adverse actions against plaintiff, including but not limited to his termination of employment, conduct that would sufficiently deter a reasonable person from engaging in protected activity.

66. Jury Demand: Plaintiff demands trial on all issues triable by a jury.

8

WHEREFORE, plaintiff respectfully asks this Court for judgment sufficient to compensate him for his economic, emotional and psychic injuries, humiliation, suffering, and to provide necessary treatment, and to punish defendant for its violation of law and deter similar violations in the future, and such additional relief as this Court may deem just.

Dated:        May 7, 2009

> Law Offices of Joshua Friedman
> 25 Senate Place
> Larchmont, NY 10538
> (212) 308-4338
> Counsel for Plaintiff
>
> By: _____
> Joshua Friedman, josh@joshuafriedmanesq.com
> JF-2176
> Rebecca Houlding,
> rebecca@joshuafriedmanesq.com
> Daniela Nanau, daniela@joshuafriedmanesq.com

9

**Exhibit A**

| Redacted |

**Fax Cover Sheet**

To: _Mike Giardin_

Date: _9/11_

Company: _Countrywide_

Fax #: _631-293-6945_

From: **Redacted**

Re: _Panio_

Total number of pages including cover sheet:_____

Comments: _Insurance_

_Clean
THS
Pictving File
You
FAB_

Please call if you have any questions or problems receiving this fax.